AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) <br> ) <br> Two Military Style Green Duffle Bags that are ) <br> Located at the FBI Madison Resident Agency, ) <br> Middleton, Wisconsin 53562 ) <br> ) | 15-CR-37-JDP <br> Case No.   14-mj-124 <br><br> **SEALED** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Western District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code Section 2339B | Providing material support or resources to Designated Foreign Terrorist Organizations. |

The application is based on these facts: See attached Affidavit.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth in the attached affidavit.

*Applicant's signature*

Lisa A. Wilson

*Printed name and title*

Sworn to before me and signed in my presence.

Date:   May 26, 2015

*Judge's signature*

Madison, Wisconsin

Magistrate Judge Stephen L. Crocker or
Magistrate Judge Peter A. Oppeneer

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF TWO MILITARY STYLE GREEN DUFFLE BAGS, LOCATED AT THE FBI MADISON RESIDENT AGENCY, MIDDLETON, WISCONSIN 53562 | Case No. 14 - 124<br><br>SEALED |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Lisa Wilson, Task Force Officer with the Federal Bureau of Investigation, Madison Resident Agency, being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for "two military style green duffle bags," which contain the possessions of Joshua Van Haften, hereinafter Van Haften, and which are stored at the FBI Madison Resident Agency, Middleton, Wisconsin. The property to be searched and the items to be seized are described in the following paragraphs and in Attachment A.

2. I am a Special Agent with the Wisconsin Department of Justice-Division of Criminal Investigation (WI DOJ-DCI), who has been assigned as a Task Force Officer with the Federal Bureau of Investigation ("FBI") Joint Terrorism Task Force ("JTTF") since approximately September 2012. I am assigned to the Madison Resident Agency ("RA") of the Milwaukee FBI Division. I have been a Special Agent with WI DOJ-DCI since 1997. Prior to that, I served as a Patrol Officer with the Beloit (WI) Police Department, starting my law enforcement career there in 1993. Throughout my law

enforcement career, I have assisted in countless criminal investigations and participated in numerous search warrants related to such investigations. As a Task Force Officer with the FBI JTTF, it is part of my duties to investigate violations of federal criminal law, including violations of Title 18, United States Code, Section 2339B, which criminalizes, among other things, providing material support to a Designated Foreign Terrorist Organization. Moreover, as an FBI Task Force Officer with the JTTF, I am also authorized to investigate violations of the laws of the United States generally and to execute search and seizure warrants issued under the authority of the United States.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not necessarily set forth all of my knowledge about this matter.

4. The property to be searched are two military style green duffle bags, hereinafter "Duffle Bags." The Duffle Bags are currently located at the FBI Resident Agency Office in Middleton, Wisconsin. Each Duffle Bag has a tag affixed to it that has the name "Van Haften Joshu" and a unique identifying number, these two numbers matching Turkish airline baggage claim tags affixed to the cover of Van Haften's passport. In addition, on the morning of April 8, 2015, prior to departing Istanbul, Turkey, for the United States and while in custody, Van Haften was observed by Turkish authorities packing two green bags.

5. Based on my training and experience and the facts set forth in this affidavit, I submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2339B--which criminalizes, among other things, providing material support to a Designated Foreign Terrorist Organization, namely, the Islamic State of Iraq and the Levant ("ISIL") are in the Duffle Bags containing Van Haften's possessions. There is also probable cause to search these Duffle Bags, more particularly described in Attachment A to this affidavit, for evidence of these crimes and contraband or fruit of these crimes as described in Attachment B.

## PROBABLE CAUSE

6. Agents attempted to contact Van Haften in August 2014 in part because of information provided to the FBI Madison Resident Agency during an interview on July 16, 2014 of Person 1, a former associate of Van Haften. Person 1 told Agents that Van Haften previously traveled to Egypt and came to the attention of the Egyptian police after a woman selling things in a marketplace did not like his verbal interaction with her, and made a complaint to the police about Van Haften taking pictures of a military facility, which is forbidden in Egypt. Person 1 said that because of Van Haften's contact with the Egyptian police, the US Embassy was notified about Van Haften. Upon notification to the US Embassy, Van Haften's sex offender status was discovered and he was returned to the United States. I have reviewed Van Haften's criminal history. He was convicted of Second Degree Sexual Assault of a Child in 1999 as well as Aggravated Battery/Intent Great Harm in 1998. Van Haften was also charged with

intentionally pointing a firearm at a person in 1999. Van Haften told Person 1 that he wanted to travel to Syria and Libya and join Jabhat Al-Nusrah.[1]

7.  On August 29, 2014, an FBI Agent interviewed Person 2 to follow-up on a complaint provided to the FBI by Person 2. Person 2 stated that on August 24, 2014, she was near the Capitol building in Madison, Wisconsin, when she saw her 11-year old son talking to an unidentified man. Person 2 informed the FBI Agent that later the same evening, Person 2's son told her that the unidentified man talked about World War III, Syria, and leaving the United States to go to Syria. On September 22, 2014, the FBI Agent showed a photograph of Van Haften to Person 2 and her son and both identified the man that they saw near the Capitol building as the man in the photograph shown to them.

8.  On September 3, 2014, FBI Agents attempted to locate Van Haften at his last known address. Agents spoke with Person 3, Van Haften's former roommate at that address. Person 3 said Van Haften had been staying at their apartment sporadically for a few weeks to a month, and that Van Haften did not really have a place to stay. Person 3 stated that Van Haften paid Person 3 $200 cash to allow him to

---

[1] On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224.
  On December 11, 2012, the Secretary of State amended the designation of AQI to include the following aliases: al-Nusrah Front ("ANF"), Jabhat al-Nusrah, Jabhet al-Nusra, The Victory Front, and Al-Nusrah Front for the People of the Levant.
  On May 15, 2014, the Secretary of State, in response to the evolving nature of the relationships between ANF and AQI, amended the FTO designation of AQI to remove all aliases associated with al-Nusrah Front. Separately, the Secretary of State then designated al-Nusrah Front, also known as Jabhat al-Nusrah, also known as Jabhet al-Nusra, also known as The Victory Front, also known as Al-Nusrah Front for the People of the Levant, also known as Al-Nusrah Front in Lebanon, also known as Support Front for the People of the Levant, and also known as Jabaht al-Nusra li-Ahl al-Sham min Mujahedi al-Sham fi Sahat al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224.

stay at the apartment. Person 3 further stated that approximately a week prior to the interview, Van Haften left for overseas and possibly to Turkey. Person 3 said that Van Haften said that he did not like living in the United States and wanted to go overseas. Person 3 said that Van Haften talked about getting his passport and birth certificate and leaving and that Van Haften made comments referring to jihad. When asked to clarify his statement regarding jihad, Person 3 said that Van Haften folded a $100 bill in a certain way to make the folded bill look like the New York World Trade Center Twin Towers, and folded a $100 bill to make it look like a missile. Person 3 said that Van Haften left nothing at the apartment when he departed.

9. On September 3, 2014, a Homeland Security Investigations (HSI) Agent confirmed that Van Haften left the United States on Tuesday, August 26, 2014, aboard Turkish Airlines Flight 0006 from Chicago O'Hare International Airport for Ataturk International Airport in Istanbul, Turkey. On September 8, 2014, the FBI confirmed that Van Haften had a return flight scheduled from Istanbul to Chicago's O'Hare International Airport for November 24, 2014, on Turkish Airlines Flight 0005, although Van Haften did not return to the United States on that flight. An HSI Agent also reported that Van Haften was in Egypt from October 2012 to January 2014.

10. On September 22, 2014, Agents interviewed Person 4 at the FBI Madison Resident Agency. Person 4 stated he met Van Haften through a friend and allowed Van Haften to stay in his house from approximately March or April 2014 to the time Van Haften departed for Turkey in August or September 2014. Van Haften lived at Person

4's residence in Cross Plains, Wisconsin, with Person 4, Person 4's brother, and Person 5.

11. Person 4 said that Van Haften said something, possibly via text message, about going to Iraq or Afghanistan as he could only stay in Turkey for approximately 90 days.

12. Person 4 said that Van Haften said that if everything works out, he will not return to the United States. Van Haften did not elaborate on what he meant by "everything working out."

13. With Person 4's consent, agents reviewed the Facebook page for Van Haften on Person 4's phone and noted the following posts with the following time stamp: Yesterday (09-21-2014), 3:58pm: Van Haften: "It's calling, I can smell it's perfume! Allah!!!" There was a link for a video: HD Tour of Jannah Paradise – Anwar Al Awlaki The Hereafter Series. [2] Van Haften also posted a link regarding an opinion that the group ISIS was created by the US Government. An agent reviewed a segment of the referenced "Tour of Jannah Paradise" video in which an English speaking male described what paradise looked like for worthy Muslims who went there in the afterlife.

14. Following the interview with Person 4, an agent verified that Van Haften's personal Facebook page was entitled "JoshuaRay VanHaften," and learned that the corresponding Facebook ID for that page is "1000007815096875." An agent was able to

---

[2] On or about July 12, 2010, pursuant to an Executive Order, Anwar Al-Awlaki (also spelled "Al-Aulaqi") was designated by the United States a "Specially Designated Global Terrorist" because of his position as a leader of Al-Queda in the Arabian Peninsula ("AQAP"), a Yemen-based terrorist group that has claimed responsibility for several terrorist acts against the United States. On or about September 20, 2011, Awlaki was killed in Yemen.

review the public profile associated to the Facebook page and noted that the location for Van Haften was listed as: "Kucuk Istanbul Sanliurfa Turkey."

15. On September 22, 2014, Agents interviewed Person 5 at the FBI Madison Resident Agency. Person 5 stated that he lived with Person 4 and Van Haften from the spring of 2014 until Van Haften's departure for Turkey.

16. Person 5 described Van Haften as a non-violent individual, but there was something strange about him. Person 5 stated that Van Haften posted a two or three minute video of himself on Facebook in which Van Haften was walking on a road and Van Haften stated that it was probably the last time that he would be heard from for a while.

17. Person 5 allowed Agents to view several text messages from Van Haften on Person 5's phone. The messages were dated September 15, 2014. The following is an excerpt sent at 9:50PM: "it's all good Craig, I Ain got no problems yet, and I knew nobody but just as I assumed, I figured I would meet people b/c of my sheer knowledge about things & it'd be all good, brothers would help me, give me money, facilitate in getting me to Iraq to help take over Baghdad." In addition, in a text sent by Van Haften at 10:28PM in response to a text by Person 5, Van Haften indicated that he had arrived in Syria.

18. In late September and early October 2014, an agent reviewed Van Haften's publicly available Facebook page. Van Haften is Facebook friends with Adouw At-Taghout ("At-Taghout"), whose profile indicated he lived in Raqqah, Syria, which based on training and experience, the reviewing agent knew was a Syrian stronghold

for ISIL. On or about October 5, 2014, At-Taghout posted the following: "The next brother that likes a pic of Asian women's aurah and it shows on my news I'm blocking ok." Van Haften responded to the post with the following "Yeah, since I've befriended you and a few other militant style brothers, as I'm seeking: many other Muslims started to befriend me, that are associated from your mutual friends. But their agenda is definitely not what I'm seeking, so I unfollow them." At-Taghout also posted the following: "What scares the living daylights out of the enemies is Martyrdom operations These attacks have been proven to be very effective against the Enemies, in particular the American cowards!" Van Haften "liked" the post made by At-Taghout.

19. An agent reviewed Van Haften's Facebook page on October 1, 2014, and noted that Van Haften "liked" the group Ansar Bayt al-Maqdis (ABM).[3] On October 1, 2014, At-Taghout wrote "To you they may be Isis or isil but to us it's the #Islamic State. The blessed land to where the best of Allah's slaves will be gathered." On or about September 30, 2014, At-Taghout posted the following: "What's wrong with being radicalized? Being radicalized is by far better than being brain dead!!" Van Haften "liked" this post as well. On September 30, 2014, At-Taghout posted a photo of the ISIL beheading of James Foley. Van Haften wrote the following comments as a response to the post: "Yet, their cursed secular laws are worse than the laws of Islam, and they want to say Shari'ah is worse than their secular laws. A bunch of morons sucking on

---

[3] According to the Department of State's website, on April 9, 2014, the Department of State announced the designation of ABM as a Foreign Terrorist Organization (FTO). Created in 2011 following the Egyptian uprisings, ABM is responsible for attacks on Israel and security services and tourists in Egypt. ABM – who shares some aspects of AQ ideology, but is not a formal AQ affiliate and generally maintains a local focus – was responsible for a July 2012 attack against a Sinai pipeline exporting gas to Israel. ABM has also targeted government officials, including the September 2013 attempted assassination of the Egyptian Interior Minister, and the January 2014 assassination of the head of the Interior Minister's technical office. In February 2014, ABM expanded its targets to include foreign tourists, and claimed responsibility for the bombing of a tour bus in the Sinai Peninsula, killing the Egyptian driver and the three South Korean tourists.

melons." "If the goddam Americans and sons of satan, Israeil wanna mutilate the dead, shit, we get an eye for an eye fool. Grow a set of nuts! Climb that fuckin tree and getcha some." Van Haften "liked" the following post made by At-Taghout on September 30, 2014: "The happiest sight for us, is to meet the enemy on the battlefield!!" On or about September 28, 2014, At-Taghout wrote "Allah sent dark clouds over #Raqqah to submerge #US and its Allies in fear. They can't bomb what they can't see. #Khilafah #islamicState."

20. On October 3, 2014, agents interviewed Person 6, a former roommate of Van Haften. Person 6 also employed Van Haften during the summer of 2014 as a painter for his company. During the course of the interview, Person 6 allowed Agents to view a series of Facebook messages exchanged between himself and Van Haften on October 1, 2014. Below is a verbatim excerpt:

Person 6: whats happening there going to come home some day?

Van Haften: Well, Turkey is looking like it is divided at the moment about attacking ISIS, which if they do then I'm gonna attack them.

Person 6: be carefull its not your fight stay safe

Van Haften: It's gonna be coming soon. I was about to cross to Syria the day before the Americans through Saudi and UAE, started bombing in Syria from their ships.

Person 6: Well be carefull

Van Haften: I was gonna be in the very city they bombed. But I didn't make it. Hopefully soon though. I'm not too worried, maybe at the moment it happens, but I'm kinda jumping headfirst into it. I'm tired of this life man.

Person 6: I know life suckes I'm really struggeling with every thing

Van Haften: I gotta do some courageous tho. I know, America things really suck, don't get any bad ideas like suicide tho!!!

21.  On October 7, 2014, an agent reviewed Van Haften's Facebook page which included a post made by Van Haften on October 7, 2014, that included the phrase "Ya Baghdadi!" and a video. An agent reviewed the video, which appeared to the agent to be a 1 minute and 50 second propaganda video for ISIL. The ISIL flag was shown several times and the video included individuals that appeared to be Islamic extremists engaging in battle. Based on the reviewing agent's training and experience, the reviewing agent knew that Abu Bakr al-Baghdadi was the leader of ISIL. The reviewing agent's review of the profile on October 7, 2014, also revealed that Van Haften "liked" the Facebook page "Support Khalifaa bagdadi." The reviewing agent knew from his training and experience that Khalifaa Bagdadiwas a reference to Abu Bakr al-Baghdadi and Khalifaa is another term for Caliph. A caliph is the leader of the Islamic Diaspora.

22.  On October 14, 2014, Van Haften responded to a Facebook posting with the following: "I'm messaging you. I'm in Istanbul." That same day, Van Haften also posted: "Bags packed next to the door ready. The brother from JN says the way isn't safe now, so he isn't trying to cross with me, so here I play video games (FB)…" Van

Haften's post also included a photo of a room with bags sitting in the corner. "JN" is an abbreviation for Jabhat al-Nusrah.

23. On October 27, 2014, Van Haften was detained in Turkey by Turkish National Police (TNP). Van Haften was held for being on the "Banned-From-Entry" list.

24. On April 8, 2015, Van Haften arrived on Turkish Airlines Flight #5, at O'Hare International Airport in Chicago, Illinois, from Istanbul, Turkey, and was turned over to FBI Milwaukee agents with the assistance of the FBI-Chicago office. Van Haften had two checked bags consisting of two military style green duffle bags that were collected from the luggage carousel by FBI Milwaukee agents. Each Duffel Bag had a tag with Van Haften's name and an identifying number. The Duffel Bags were transported to the FBI-Madison Resident Agency by the collecting FBI Milwaukee agents and placed into a secure room. I observed that the number on each Duffel Bag baggage tag matched the numbers of the two baggage claim tickets affixed to the cover of Van Haften's passport. On the same day, FBI-Milwaukee agents transported Van Haften directly to the Dane County Sheriff's Office (WI) Jail. During that transport, Van Haften asked about his possessions, saying that he had two green bags that were checked.

## DESIGNATED FOREIGN TERRORIST ORGANIZATION

25. On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq (AQI), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as

a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224. On May 15, 2014, the Secretary of State amended the designation of al-Qa'ida in Iraq ("AQI") as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham ("ISIS"), the Islamic State of Iraq and Syria ("ISIS"), ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. Although the group has never called itself "Al-Qaeda in Iraq (AQI)," this name has frequently been used to describe it through its history. In audio recording publicly released on June 29, 2014, ISIS announced a formal change of ISIS's name to Islamic State ("IS")

26.   Based on consultation with other experienced counterterrorism investigators, it is believed that Van Haften practiced tradecraft commonly used by terrorists by booking a ticket to Turkey, which shares a land border with Syria and has been used frequently by extremists as an entry point to wage violent jihad by joining ISIL. Van Haften stated his support for ISIL and intent to attack Turkey if they joined the fight against ISIL. Additionally, Van Haften texted Person 5 that he was in Syria and planning to go into Iraq to fight Shiites. Furthermore, Van Haften posted statements on his Facebook account referencing paradise being near and a video featuring Anwar Al Awlaki, who the co-case agent knows to be the deceased cleric responsible for radicalizing countless extremists. Based on these assertions, there is

probable cause to believe that Van Haften traveled or intended to travel into Iraq or Syria to join ISIL and to engage in violent jihad, and that there is evidence of these crimes in the two military style green duffle bags containing Van Haften's possessions and recovered from the luggage carousel at Chicago's O'Hare International airport by FBI agents on April 8, 2015.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

27.     In my training and experience, and through conversations with other experienced counterterrorism investigators, I have learned that individuals involved in material support to terrorists may use several means to communicate with like-minded individuals and may use a variety of measures to provide support, financially or otherwise, to terrorists and or terrorist organizations. The FBI is seeking any and all notes, paraphernalia, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, documents, papers, e-mail messages, chat logs, digital devices to include cellular phones, electronic messages, and other digital data files) concerning communications, financial statements, or notes involving Material Support to Terrorism contained in the two military style green duffle bags located in a secure room at the FBI Madison Resident Agency in Middleton, WI.

28. Based on the forgoing, I request that the Court issue the proposed search warrant.

*[signature]*

Task Force Officer Lisa A. Wilson
Federal Bureau of Investigation
Madison RA/JTTF

Sworn to before me this 26TH day of May, 2015.

*[signature]*

United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to Joshua Van Haften's possessions located in two military style green duffle bags, which accompanied him on Turkish Airlines Flight #5 from Istanbul, Turkey, to O'Hare International Airport in Chicago, IL, on April 8, 2015. These Duffle Bags were obtained by FBI Agents from the luggage carousel at Chicago's O'Hare International Airport and contained luggage tags corresponding with the baggage claim tags affixed to the cover of Van Haften's passport. The Duffle Bags were transported by FBI Agents to the Madison Resident Agency, in Middleton, Wisconsin, and placed in the office's designated Evidence Room.

## ATTACHMENT B

## Particular Things to be Seized

I.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 2339B, which criminalizes among other things, providing material support to a Designated Foreign Terrorist Organization involving Joshua Van Haften and other conspirators known and unknown including, for the Duffle Bags listed on Attachment A, information pertaining to the following matters:

   a.   Any and all communications or documentation regarding information about Syria, Iraq, Afghanistan, Islamic State of Iraq and the Levant (ISIL), Islamic State of Iraq and al-Sham (ISIS), the Islamic State of Iraq and Syria (ISIS), ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production, Jihad, martyrdom, hijrah, the travel plans. Any and all communications or documentation regarding the travel plans or general movements of Joshua Van Haften.

   b.   Any and all communications or documentation involving the use or acquisition of weapons or explosives, and military type training, including training on the use or manufacture of weapons or explosives;

   c.   Any and all communications or documentation regarding the remittance or transfer of money;

  d. Any and all communications or documentation involving operational security and the use of other more secure means of communication used by the communicants or their associates;

  e. Any and all communication or documentation involving the creation and distribution of propaganda, or other media used to radicalize and recruit extremists;

  f. Any and all communication or documentation involving the radicalizing and recruiting of persons for the purpose of conducting terrorist attacks or fundraising on behalf of a terrorist group, or group otherwise engaged in terrorist activity;

  g. Any and all communications or documentation involving the provision of material support or resources to terrorists (including the provision of man power or personnel).

  h. Any computer, computer hard drive, or other physical object upon which electronic information can be recorded (hereinafter, "computer") that is called for by this warrant, or that might contain things otherwise called for by this warrant:

    i. evidence of who used, owned, or controlled the computer at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    ii. evidence of software that would allow others to control the computer, such as viruses, Trojan horses, and other forms of malicious software, as well as

evidence of the presence or absence of security software designed to detect malicious software;

 iii.  evidence of the lack of such malicious software;

 iv.  evidence of the attachment to the computer of other storage devices or similar containers for electronic evidence;

 v.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer;

 vi.  evidence of the times the computer was used;

 vii.  passwords, encryption keys, and other access devices that may be necessary to access the computer;

 viii.  documentation and manuals that may be necessary to access the computer or to conduct a forensic examination of the computer;

 iv.  contextual information necessary to understand the information described in this attachment.



