IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.

JOSHUA VAN HAFTEN,                    Case No.: 15-CR-00037-JDP

Defendant.

GOVERNMENT'S MEMORANDUM IN SUPPORT OF TERRORISM ENHANCEMENT

The United States of America, by John W. Vaudreuil, United States Attorney for the Western District of Wisconsin, Jeffrey M. Anderson, First Assistant United States Attorney for that district, and Lolita Lukose, Trial Attorney, National Security Division, files this memorandum in support of its position that the enhancement for terrorism provided for in USSG § 3A1.4 is applicable in this case, as recommended in the Presentence Report. (PSR).

USSG § 3A1.4 states that if the defendant is guilty of a felony offense "that involved, or was intended to promote" a federal crime of terrorism the offense level should be increased by 12 levels and the criminal history category should be increased to Category VI. USSG § 3A1.4 (a) (b); PSR ¶ 58. The application notes define a "federal crime of terrorism" as "having the meaning given that term in 18 U.S.C. § 2332b(g)(5)." § 2332b(g)(5), in turn, defines "federal crime of terrorism" as an offense that "(A) is calculated to influence or affect the conduct of government by intimidation or coercion,

1

or to retaliate against government conduct; and (B) is a violation of... section 2339B (relating to providing material support to terrorist organizations)." 18 U.S.C. § 2332b(g)(5); USSG § 3A1.4, comment. (n.1). The enhancement can also be applied to attempt and conspiracy charges. *United States v. Graham,* 275 F.3d 490, 516-17 (6th Cir. 2001).

USSG §3A1.4(a) has been satisfied because the defendant pleaded guilty to violating 18 U.S.C. § 2339B(a)(1), and admitted that he knowingly attempted to provide material support and resources to a foreign terrorist organization, ISIL. This "offense is a felony that involved . . . a federal crime of terrorism." Id.

The only question remaining for this Court is whether the defendant's conduct was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332B(g)(5)(A). The government need only demonstrate by a preponderance of the evidence that the material support or resources was "calculated to influence or affect the conduct of government by intimidation or coercion or retaliate against government conduct." *United States v. Moncivais*, 492 F.3d 652, 658-59 (6th Cir. 2007) (quoting U.S.S.G. § 6A1.3(a)); *United States v. Leahy*, 169 F.3d 433, 445–48 (7th Cir. 1999) (explaining that the enhancement is applicable to conduct that aims to affect government operations, not conduct aimed at private persons that may indirectly affect government operations).

In determining whether the intent element is met, the Court should consider the defendant's "purpose" or "motive" in committing the offense. *United States v.*

*Christianson*, 586 F.3d 532, 539-40 (7th Cir. 2009); *see also United States v. Mohamed*, 757 F.3d 757 (8th Cir. 2014) (stressing that the enhancement should apply where the "defendant planned his offense—whatever his reasons or motivations—with the purpose of influencing or affecting government conduct"). As set forth below, there is overwhelming evidence that the defendant's conduct was intended to influence or affect the conduct of the United States Government by intimidation or coercion, as well as to retaliate against government conduct—both of the United States and other governments. The unchallenged facts in the Presentence Report (PSR) support this finding.

On August, 26, 2014, the defendant left the United States aboard a Turkish Airlines flight, from Chicago O'Hare International Airport to Ataturk International Airport in Istanbul, Turkey. (PSR ¶ 27). The defendant's travel was not to vacation in Istanbul but, as shown by his own statements, he was traveling to Syria to join the Islamic State in the Levant (ISIL), a designated foreign terrorist organization. The defendant documented these attempts through his Facebook posts. The evidence, from the defendant's own Facebook posts, shows his intent to join ISIL. More importantly, as illustrated below, the defendant intended to join ISIL to influence or affect the conduct of the United States Government as well as other governments including Israel and Turkey, or to retaliate against the United States Government.

On September 23, 2014, the defendant posted the following on his Facebook: "I need to go soon. I tried on Thursday and Friday to get into tell Abiad but the stupid

Turkish want fuckin money and the Syrians all want money. I don't have any goddam motherfuckin money!" On the same day, the defendant also posted: "I'm gonna wig the fuck out and start war with the fuckin Turkish pieces of shit! I have to get there soon! It is beginning. I don't want to be stuck in Istanbul and fight the damn Americans here." (PSR ¶ 34).

The defendant was Facebook friends with Adouw At-Taghout, whose profile indicated he lived in Raqqah, Syria, a Syrian stronghold for ISIL. (PSR ¶ 32). On September 30, 2014, At-Taghout posted a video of the ISIL beheading of James Foley. In a comment on that video link, the defendant posted: "Yet, their cursed secular laws are worse than the laws of Islam, and they want to say Shari'ah is worse than their secular laws. A bunch of morons sucking on melons. If the goddam Americans and sons of satan, Israeil (sic) wanna mutilate the dead, shit, we get an eye for an eye fool. Grow a set of nuts! Climb that fuckin tree and getcha some." (PSR ¶34).

On October 5, 2014, Adouw At-Taghout posted the following: "what scares the living daylights out of the enemies is Martydom operations these attacks have been proven to be very effective against the Enemies, in particular the American cowards!" Van Haften "liked" the post made by At-Taghout. (PSR ¶ 32). In addition, Adouw At-Taghout quoted Osama bin Laden: "If avenging the killing of our people is terrorism, if killing those who kill our children is terrorism, then history should be a witness that we are terrorists." Van Haften "liked" this post as well. (PSR ¶41). It is clear from the

defendant's own statements that he intended to retaliate against American and Israeli action.[1]

On October 1, 2014 the defendant engaged in a series of text messages with a former roommate, referenced as person 6 in the complaint affidavit:

> Person 6: What's happening there going to come home some day?
>
> Van Haften: Well, Turkey is looking like it is divided at the moment about attacking ISIS, which if they do then I'm gonna attack them.
>
> Person 6: be careful its not your fight stay safe
>
> Van Haften: Its gonna be coming soon. I was about to cross to Syria the day before the Americans through Saudi and UAE, started bombing in Syria from their ships.
>
> Person 6: Well be careful
>
> Van Haften: I was gonna be in the very city they bombed. But I didn't make it. Hopefully soon though. I'm not worried, maybe at the moment it happens, but I'm kinda jumping headfirst into it. I'm tired of this life man.

The defendant went on to say that he had to do something courageous. (PSR ¶35).

The defendant by his very own statements was intending to attack not just the United States, but any country fighting against ISIL, including Turkey. Van Haften swore his allegiance to Abu Bakr al-Baghdadi, the leader of ISIL, by making a bayat or oath. (PSR ¶¶ 44-45). Around the same time that the defendant was using Facebook to

---

[1] The Fifth and Sixth Circuits have rejected claims that the government to be affected must be the United States. *United States v. Puerta*, 249 F. App'x 359 (5th Cir. 2007) (finding that the terrorism enhancement applies where a Columbian terrorist group attempted to influence the government of Columbia); *United States v. DeAmaris*, 406 F. Supp. 2d 748 (S.D. Tex. 2005); *United States v. Assi*, 586 F. Supp. 2d 841 (E.D. Mich. 2008). *See also United States v. Aref*, No. 04-CR-402, 2007 WL 804814, at *2 (N.D.N.Y. Mar. 17, 2007).

5

show his support for Abu Bakr Al-Bagdhadi, an individual named Abu Khalid As-Somali posted on Facebook the following: "I think it's clear now that if you live in the west your Hijra plan should be kept safe from the public attention just like your password." In response to this post, the defendant stated: "That was FOR SURE!!! Haha, well I made it into a joke to some people just before I went, but I'm sure NSA knew my plans. My password has always been 'Death to America's NEW WORLD ORDER' for the past fifteen years when me & Ibrahim Malik al-Amin made a covenant in the prison cell. That was no secret to NSA." (PSR ¶ 1, Complaint, ¶ 25). On October 14 and 15, the defendant engaged in a series of posts with an individual on Facebook who had stated: "If you really intend, you would prepare." The defendant goes on to describe his effort in getting to Syria and further states: "I'm posting my whole life on here, cuz I'm sick & tired of Americas kufr, I'm finished. It's either now or never. If & when the Kuffar (slaves of America) come at me to arrest me or take me, I'm fighting them! Fuck if they ever take me freely again!!!!!!!!!!" (PSR ¶ 40).

Perhaps the defendant's clearest statement of his intention to fight against America was on October 17, 2014, in a discussion with another individual on a social media platform. In that discussion, the defendant stated: "And American is a damn trap. It's horrible! I hate it, hate, hate it there. So you can have fun, do you da'wah, but I'm gonna kill me some American soldier boys." The defendant went on to say: "Fuck their godless laws! I hate it! Duck being a 'sex offender' for life there. They didn't

respect me my whole life. A bunch of shaytan's. Death to them all and their little children." (PSR ¶ 42).

Van Haften also had a series of chats on a social media platform with his mother. On September 21, 2014, he said to his mother: "If they ask you if you know where I am, say the truth, that I went to Iraq, to fight the Americans." On October 25, Van Haften communicated with his mother "the only thing that matters to me is joining my brothers for the war against American liars." (PSR ¶ 43).

It is clear from the defendant's statements about America, and also about Israel and Turkey, that the defendant intended to influence or affect government conduct, and retaliate against government conduct, in particular the United States' effort to combat ISIL in the Syria/Iraq region. His actions also support that conclusion. The defendant did not merely post his support of ISIL on Facebook, he traveled to Turkey, and on more than one occasion attempted to enter Syria from Turkey in order to join ISIL. In addition, the defendant tried to assist another American, Leon Davis[2], in joining ISIL. He attempted to meet Davis in Istanbul upon Davis's arrival -- actually waiting for Davis at a tram stop in Istanbul -- and planned to travel with Davis to Syria. The defendant also provided Davis with advice on the best way to evade law enforcement in the United States, including advising him to buy a round trip ticket.

---

[2] Leon Davis was convicted in the Northern District of Georgia of providing material support to a designated foreign terrorist organization on May 27, 2015. On July 28, 2015, he was sentenced to 180 months in prison with a life time of supervised release. PSR ¶ 12.

7

The defendant's actions and words clearly show a person who intended to fight against the United States. The defendant's actions and words, and his efforts to help Leon Davis travel and fight with ISIL, establish that his offense was "calculated to influence or affect the conduct of government by intimidation or coercion, and to retaliate against government conduct." For all these reasons, the government respectfully asks this Court to apply the terrorism enhancement in this case.

Dated this 6th day of February 2017.

Respectfully submitted,

/s/

JOHN W. VAUDREUIL
United States Attorney

/s/
JEFFREY M. ANDERSON
First Assistant U.S. Attorney

/s/
LOLITA LUKOSE
Trial Attorney