IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                       Plaintiff,

v.

JOSHUA VAN HAFTEN,

                       Defendant.

OPINION & ORDER

15-cr-37-jdp

---

Defendant has pleaded guilty to providing material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1). A conviction under this statute raises the possibility that the guideline enhancement for terrorism, USSG § 3A1.4, might apply. If the enhancement applies, defendant gets a 12-level increase in offense level and his criminal history is deemed to be Category VI. The enhancement would have a huge impact on the advisory range under the guidelines, so the parties would like a ruling on the issue before they submit their sentencing memoranda.

The parties agree on the definitional starting point. The terrorism enhancement applies if defendant's crime was "involved, or was intended to promote, a federal crime of terrorism." USSG § 3A1.4A(a). According to Application Note 1, "federal crime of terrorism" is defined in 18 U.S.C. § 2332b(g)(5). It gets a little bit complicated at this point, because that statutory definition does not merely list the statutory crimes that count as federal crimes of terrorism. Instead, § 2332b(g)(5) provides:

> (5) the term "Federal crime of terrorism" means an offense that—
>
> > (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and

> (B) is a violation of—[a long list of enumerated statutory sections]

Defendant has pleaded to one of the enumerated offenses, so the question here is whether his crime was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." This is where the parties disagree: defendant contends that his crime was not calculated to do the things required under element (A) of the definition.

A good starting point for this analysis is to consider the circumstances under which the terrorism enhancement would *not* apply. I start here because it might seem that any conviction for providing material support or resources to a foreign terrorist organization would be calculated to intimidate, coerce, or retaliate against a government. After all, coercion and intimidation are inherent in the concept of terrorism. *See United States v. Christianson*, 586 F.3d 532, 538 (7th Cir. 2009) (citing dictionary definitions of terrorism). The reason for the requirements of element (A) is that terrorist organizations can have complex purposes, which might include benign or even beneficial goals as well as terroristic ones. For example, Hamas (a designated foreign terrorist organization) purports to have a social services wing as well as a military one. So if one knowingly supported Hamas expecting that Hamas would use that support to provide humanitarian aid to needy Palestinians, it would be a federal crime, but the terrorism enhancement would not apply.[1]

The government contends that defendant provided material support to a foreign terrorist organization specifically to support its terroristic objectives, thus plainly satisfying

---

[1] There is another way in which the enhancement might apply: if the criminal conduct were calculated only to terrorize civilians, and not to intimidate, coerce, or retaliate against a government. *See* Application Note 4. Neither side presses that issue here, and I do not think it applies: defendant's criminal conduct was directed, at least in part, at the United States.

element (A). The parties agree that the government has the burden to prove the facts supporting the terrorism enhancement. Ordinarily, sentencing facts need only be proven to a preponderance. *United States v. Noble*, 246 F.3d 946, 953 (7th Cir. 2001). But defendant suggests that I follow the Ninth Circuit rule that when the facts relate to a particularly significant guideline enhancement, they should be proven by clear and convincing evidence. Dkt. 72, at 32 (citing *United States v. Hymas*, 780 F.3d 1285, 1289-90 (9th Cir. 2015), and *United States v. Montgomery*, 262 F.3d 233, 249-50 (4th Cir. 2001)). If I had to decide the issue I would decline to follow the Ninth Circuit rule because it would engender additional complicated disputes over when an enhancement creates a "disproportionate effect," and defendant cites no support for the rule in this circuit. But I do not have to decide the issue, because the government's proof here would meet either standard.

Let's start with the core undisputed facts: defendant travelled to Turkey, intending to go to Syria where he would join ISIS, a designated foreign terrorist organization. The material support he intended to provide to ISIS was his own person and effort. He posted accounts of his travels and his intentions on social media. The central issue here, as both sides seem to agree, is: what was defendant's motive in seeking to join ISIS? Both sides focus on defendant's social media communications as an expression of his intentions, but the parties diverge on what those communications mean.

According to the government, defendant's purpose was to take up arms against the United States, which he made clear in many Facebook messages and postings, and his "likes" of statements by ISIS leaders and sympathizers. The most aggressive and explicit of defendant's own statements were in an exchange with another Facebook user:

> And American is a damn trap. It's horrible! I hate it, hate, hate it there. So you can have fun, do you da'wah [spreading the

>word of Islam], but I'm gonna kill me some American soldier boys.
>
>Fuck their godless laws! I hate it! Duck [sic] being a 'sex offender' for life there. They didn't respect me my whole life. A bunch of shaytan's [devils]. Death to them all and their little children.

PSR ¶ 42. He made similar statements to his mother:

>If they ask you if you know where I am, say the truth, that I went to Iraq, to fight the Americans.
>
>The only thing that matters to me is joining my brothers for the war against American liars.

PSR ¶ 43. There are more such statements, including some directed at Turkey for its attacks on ISIS, but I need not repeat them all for present purposes. The bottom line is that the government asks the court to take defendant at his word and find that defendant wanted to join ISIS so he could fight against America and kill Americans. Under this view of defendant's actions, I would find that his criminal conduct was indeed calculated to influence or affect the conduct of government by intimidation or coercion. And, perhaps more plainly, I would find that it was calculated to retaliate against the government for its treatment of Muslims in general and specifically for its treatment of defendant as a designated sex offender.

    Defendant does not deny that he made any of these statements; he concedes that they are accurately cataloged in the PSR. But defendant contends (through counsel of course) that a more comprehensive review of his communications would show that he is actually "nuts" (counsel's word choice) and that, in deciding to join ISIS, he did not rationally calculate to influence or coerce any government.[2] Instead, counsel contends that defendant subscribed to

---

[2] Defense counsel does not specifically address the "retaliation" prong of element (A), which

4

an idiosyncratic amalgam of numerology, conspiracy theories, and mystic Islam. And, in his mind, he went to join ISIS so he could be part of a Muslim community at the end of the world, which he thought was fast approaching. Counsel argues that the killing Americans stuff is a minor theme, mainly an expression of frustration arising from the way he gets treated as a sex offender, and not really sincere. And all of this must be viewed in light of the serious head injury defendant suffered when he was 12 years old. Of course I'm giving this only a quick summary here; counsel describes defendant's strange world view and its evolution in a 37-page brief, supported by ample exhibits showing defendant's social media work.

I am thoroughly persuaded that defendant believes a lot of weird things that are not true, such as that the numbers 9 and 11 somehow resonate and reveal important truths about the world and the future, that Prince William is the antichrist and his wife is the whore of Babylon, and that the end of days is nigh. It may also be true that defendant's weird world view is somehow related to a serious bicycle accident he had at the age of 12, as defendant apparently believes. (Counsel does not expressly argue that defendant is impaired by a brain injury, which would be a medical opinion for which I have no direct support.) Defendant holds many delusional beliefs, but he is not irrational. Among his beliefs are that America is evil, that it is actively anti-Islam, and that he has been wronged by being labeled a sex offender for life on the basis of consensual sex with a girl just three years younger than he was. His decision to join ISIS to fight against America is a rational act of retaliation, even if some of the beliefs that motivated his decision are delusional. Defendant is capable of

---

is the part that fits most naturally as an explanation of defendant's motives. But this is detail; I understand defendant's argument to be applicable to all parts of element (A).

"calculation," and his adherence to numerology, conspiracy theories, and mystic Islam gives me no reason to doubt that his criminal conduct was calculated to retaliate against the government (and to influence its conduct by intimidation or coercion).

As defense counsel points out, defendant also made some moderating statements. To the same Facebook correspondent that he pledged "death to them all," he also said:

> I'm not going for fighting. I'm not initiating fighting. I'm going to help & build Khilafah [the Caliphate]. Build roads, help the helpless. Do what I can. And when the Kuffar [non-believers] come to fight & kill, then I will defend myself or my people.

PSR ¶ 42. If the overall tenor of defendant's statements were of the "help the helpless" variety, defense counsel would have a decent argument. But viewing defendant's communications as a whole, the expressions of charity are only a minor theme. Defendant's primary reason for pledging allegiance to ISIS is to join the battle against the enemies of ISIS, most particularly the United States. Based on a 2015 article in the Atlantic, defense counsel contends that ISIS ideology is inextricably linked to religious prophesy about the apocalypse, and that that is what appealed most to defendant. Dkt. 72, at 24-25. But the article on which defense counsel bases his assessment of ISIS also makes clear that ISIS is resolutely committed to battle with the West. There is no charitable wing to which defendant might have committed himself, so that I could regard defendant's pledge to ISIS as calculated only to participate in the development of a peaceful Muslim community and to be with his fellows at the final judgment.

I find that the government has met its burden (even under the clear and convincing standard) to show that the terrorism enhancement, USSG § 3A1.4, applies.

One last point. Although defendant has already been found competent, and the terrorism enhancement applies, the defendant's delusional world view, and the potential

6

impact of his brain injury, are factors relevant to defendant's culpability and the danger he poses. Accordingly, the court will consider these issues at sentencing.

Entered February 9, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge