IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.                                    Case No.  15-CR-00037-JDP

JOSHUA VAN HAFTEN,

                Defendant.

GOVERNMENT'S SENTENCING MEMORANDUM

I.      Introduction

Joshua Van Haften is a 36-year old man who took serious, concrete steps to fight with foreign terrorists against the United States and its allies.  Apparently for many reasons, including the requirement that he register as a convicted sex offender because of his prior felony sex crime conviction, Van Haften's anger grew to the point where he wanted to send a message to, and retaliate against, his home country.  Directly to friends and family, and also online, Van Haften made very clear his desire and plan to fight abroad with terrorists, and to kill Americans and American allies.  But he not only spoke, he acted.  Van Haften pledged his allegiance to ISIL; he traveled to Turkey; he attempted on more than one occasion to enter Syria to begin the fight; and, while in Turkey, he actively assisted another American planning to travel to Turkey to fight with the terrorists.

1

Van Haften committed a federal crime of terrorism.  His conduct was calculated to influence and affect the United States government and its allies, and to retaliate against the United States. Given this, Van Haften faces an advisory guideline range of 292-365 months in prison, capped by statute at 15 years. The United States recommends a sentence of 15 years in prison.

II.    Argument

Sentencing in Federal Courts is guided by 18 U.S.C. § 3553.  Section 3553 directs this Court to focus on who the defendant is and what the defendant did (Section 3553(a)(1)), and to address various societal goals in sentencing (Section 3553(a)(2-7)).  A brief analysis of each of these components supports the recommended sentence.

A.  History and Characteristics of the Defendant

In the defense memorandum opposing the terrorism enhancement, defense counsel contended that the defendant spoke and acted as he did because the defendant is "nuts."  The defense contended this "condition" explained the defendant's skewed world view, his conspiracy theories, his belief that the world-end was fast approaching, and his desire to be with his Muslim brothers in the fight.  In correctly finding the terrorism enhancement applicable, this Court pointed out that Van Haften has been found competent, and stated that Van Haften's "delusional world view" and the potential impact of the brain injury he suffered when he was 12 are factors to consider at sentencing as potentially "relevant to the defendant's culpability and the danger he poses."  R. 73 at pp. 6-7.

Rather than being mitigating, the defendant's world view, his view that America is evil, his conspiracy theories -- views he shares with others -- when combined with his willingness to plan and act, make him more culpable and more dangerous, and support the recommended 15-year sentence. Rather than calling the defendant "nuts," better words are "angry, troubled, and frightening."  While his views, words, and actions are most certainly frightening to the vast majority of us, he shares them with many others planning and committing acts of violent extremism.

If we were to look into the minds of those convicted of committing acts of terrorism, and those convicted of providing, or attempting to provide, material support to terrorists, we would see angry, troubled, and frightening minds.  Clearly, we will never understand, and will always find terrifying, the minds of Timothy McVeigh, the Oak Creek Sikh Temple murderer, and the Charleston church murderer, to name just a few, and other mass murderers of innocent victims.   These individuals are often conspiracy theorists with an end-of-time world view.  Like Van Haften, they seem "nuts" and frightening to most of us because we can't conceive of, nor subscribe to, the sort of thinking that leads one to commit mass murder, or to leave the United States to fight and possibly die with terrorists like ISIL.

The defense will likely contend at the sentencing hearing, as it did in its terrorism enhancement brief, that the defendant had a head injury 24 years ago, is "nuts," and accordingly isn't a terrorist and should be sentenced well below the 15-year maximum penalty. To the contrary, individuals with beliefs like this defendant, beliefs the

majority of us find strange and frightening, often intend to commit, and actually commit, horrible acts of violence based on those beliefs.

This defendant is a classic example of a home-grown violent extremist.  He is angry, believes the United States is evil, and believes in dangerous conspiracy theories. Significantly, he also acted on his beliefs and world-view by traveling to Turkey and the Syrian border in an attempt to fight with ISIL against the United States and its allies, and by actively assisting another American who wanted to fight with the terrorists. This defendant did much more than talk about terrorism -- he acted.  Rather than being mitigating factors, the views that fueled his actions make Van Haften more dangerous, and deserving of the 15-year maximum sentence.

   B.   Nature and Circumstances of the Offense

18 U.S.C. § 3553(a)(1) also directs the Court to consider the nature and circumstances of the offense -- in other words, what the defendant did.  The defendant's words and actions also support the 15-year sentence.

Van Haften flew to Istanbul  in August 2014 from Chicago for the purpose of crossing into Syria.  He intended to provide material support to ISIL by fighting against the United States and its allies.  While in Turkey, the defendant made a series of Facebook posts clearly documenting his intentions and activities.  On September 14, Van Haften posted on Facebook a photo of himself working out, with the caption "Hitting the gym! ... just to get ready for hiking the mountains into Shaam!"  ("Shaam"

is in reference al Al-Sham, another name for Syria."[1])   The text accompanying the image listed the anabolic steroids Van Haften was taking, and the weight training he was doing, as he was "[g]etting ready for the big war against Muslims."

On September 21 Van Haften posted: "It's calling, I can smell it's perfume! Allah!!!" His message included a link for a video entitled, "HD Tour of Jannah Paradise – Anwar Al Awlaki The Hereafter Series." (Anwar Al-Awlaki -- a leader of Al Queda in the Arabian Peninsula, which has claimed responsibility for several terrorist attacks against the United States -- was killed in Yemen in 2011.)   Van Haften listed his location as: "Kucuk Istanbul Sanliurfa Turkey." On September 21 Van Haften also texted his mother: "If they ask you if you know where I am, say the truth, that I went to Iraq, to fight the Americans."

Many of those convicted of attempting to provide material support to ISIL, like Leon Davis in this case, have been arrested at an American airport attempting to fly overseas to get to Syria.  Unlike them, this defendant had the determination and ability to successfully travel to Turkey and attempt to cross into Syria on several occasions.

On September 30, Adouw At-Taghout -- a person in Syria at the time -- posted a photo of the ISIL beheading American journalist James Foley.[2]  In response, Van Haften posted:

> Yet, their cursed secular laws are worse than the laws of Islam,
> and they want to say Shari' ah is worse than their secular laws.

---

[1] Al- Sham, endonym of the region bordering the eastern Mediterranean Sea, usually known as the Levant or the region of Syria.

[2] James Foley, while working as a freelance war correspondent during the Syrian Civil War, was abducted in 2012 in Syria. He was beheaded in August 2014 -- the first American citizen killed by ISIS.

> A bunch of morons sucking on melons.... If the goddam
> Americans and sons of satan, Israeil wanna mutilate the dead,
> shit, we get an eye for an eye fool.  Grow a set of nuts!  Climb
> that fuckin tree and getcha some.

On that same day, Van Haften "liked" the following post made by At-Taghout: "The happiest sight for us, is to meet the enemy on the battlefield!!"

On October 7, Van Haften stated on Facebook:  "My password has always been 'Death to America's NEW WORLD ORDER."  On October 17, Van Haften posted an image on Facebook with his bai'ah – his oath of obedience to the leader of ISIS.  On October 22, Van Haften "liked" another post made by At-Taghout, a quote attributed to "Sheikh Osama bin Laden": "If avenging the killing of our people is terrorism, if killing those who kill our children is terrorism, then history should be a witness that we are terrorists."  Finally, in late October Van Haften sent the following texts to his mother:

> The only thing that matters to me is joining my brothers
> for the war against America liars.
>
> There is nothing greater than having my blood spilled on the
> battlefield against the enemies of Allah!

In late October 2014, Van Haften made plans to meet Leon Davis – a Georgia man planning to travel from the United States to Turkey -- so the two could travel together to ISIL-controlled territory.  Van Haften's role was to assist Davis in getting to Turkey and on to Syria.  Van Haften gave travel advice to Davis (no need for Davis to shave his beard; Davis should "be gentle and warm with everyone.  smile as your usual warm self."), and detailed directions to the Istanbul metro stop where Van Haften would be waiting.  Leon Davis did not make it to Turkey.  On October 24, 2014, federal

6

agents arrested him at Hartsfield International Airport in Atlanta as he was attempting to depart for Istanbul. As he had promised, Van Haften was waiting for Davis at the Istanbul tram stop when Davis was arrested. (On May 27, 2015, Davis pleaded guilty to Attempting to Provide Material Support to a Foreign Terrorist Organization; in July 2015, he was sentenced to 15 years in prison.)

Van Haften made his intentions clear to friends and family, and to others through his online postings. And he then took serious actions confirming his intent to join the terrorists and fight against America and its allies. His actions support the recommended 15-year sentence.

III.     Societal Goals of Sentencing

18 U.S.C. § 3553 directs the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in the subsection." Included in those factors are the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, and to protect the public from further crimes of the defendant.

A 15-year sentence in this case is just punishment and reflects the seriousness of the offense. Joshua Van Haften travelled to Turkey, and the Syrian border, attempting to join a terrorist organization. He intended to fight against, and to kill if necessary, Americans and American allies. Joshua Van Haften is a dangerous, homegrown violent extremist who has shown that he intends to act on his beliefs. The 15-year sentence will appropriately protect the public from further crimes being committed by this defendant.

IV.    Conclusion

Joshua Van Haften committed a federal crime of terrorism.  He pledged his allegiance to Abu Bakr al Baghdadi and to ISIL, and twice tried to cross from Turkey to Syria to join the terrorist organization.  Van Haften clearly intended to kill Americans and American allies. Van Haften also assisted Leon Davis in his attempts to travel to Syria to join ISIL.  He faces an advisory guideline range of 292-365 months in prison, capped by the statutory maximum 15-year penalty.  The government respectfully recommends that the Court impose a 15 -year sentence.

Dated this 16th day of February 2017.


                                        Respectfully submitted,


                              _____/s/_____
                              JOHN W. VAUDREUIL
                              United States Attorney


                              _____/s/_____
                              JEFFREY M. ANDERSON
                              First Assistant U.S. Attorney


                              _____/s/_____
                              LOLITA LUKOSE
                              Trial Attorney