PROB12C
(07/93)

# UNITED STATES DISTRICT COURT
for
## Western District of Wisconsin
### PETITION FOR SUMMONS FOR OFFENDER UNDER SUPERVISION

**Name of Offender:** Joshua Van Haften                          **Case Number:** 15-cr-37-jdp-1
Janesville, Wisconsin

**Name of Judicial Officer:**   Honorable James D. Peterson

**Sentencing Date:** February 17, 2017

**Offense:** Providing Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1), a Class C felony

**Sentence:** 120 months' imprisonment; life term of supervised release

**Type of Supervision:** Supervised release                      **Date Supervision Commenced:** May 18, 2023

**Assistant U.S. Attorney:** Elizabeth Altman                    **Defense Attorney:** Joseph Bugni *(previously appointed)*

---

## PETITIONING THE COURT

☒ To issue a summons for Mr. Van Haften to appear at a hearing before Your Honor to consider a modification to the discretionary conditions of supervised release and address the alleged violation.

| **Violation** | **Nature of Noncompliance** |
|---|---|
| Special Condition No. 13: | "Participate in a mental health referral, assessment and treatment as approved by the supervising U.S. Probation Officer and comply with all rules, regulations and recommendations of the mental health agency or its representatives to the extent approved by the supervising U.S. Probation Officer...." |
| | On July 5, 2023, Mr. Van Haften failed to attend a scheduled appointment to complete his psychiatric evaluation with Alay Psychiatry. |
| | **Recommended Modification of Conditions** |
| Special Condition No. 21: | "Participate for a period of 365 days in a location monitoring program that may include the following technologies: radio frequency (RF) monitoring, passive global positioning system (GPS) monitoring, active GPS monitoring, or voice recognition. Defendant shall abide by the technology requirements implemented at the direction of the supervising U.S. Probation Officer. Defendant shall be responsible for the cost of location monitoring." |
| Special Condition No. 22: | "Submit to periodic polygraph testing at the direction of the supervising U.S. probation officer as a means to ensure compliance with treatment and the requirements of supervision. Defendant presents an on-going risk to the community, as substantiated by his offense of conviction, and those specific risks |

are linked to interactions or financial support of any known member of terrorist organizations; and viewing or possessing any film, video, picture, or writings supporting domestic terrorism. Defendant's answers to questions by the polygraph examiner shall be truthful in all respects unless a fully truthful statement would tend to incriminate defendant, in violation of defendant's constitutional rights, in which case defendant has the right to remain silent."

## HISTORY

Prior to Mr. Van Haften's release from custody from the Bureau of Prisons (BOP), the undersigned officer was informed Mr. Van Haften would not receive pre-release placement at a residential reentry center. He had no viable release plan. On March 8, 2023, while incarcerated, Mr. Van Haften agreed to a modification of his conditions of supervised release to add a 120-day public law placement at a residential reentry center upon the first available vacancy. On March 13, 2023, a *Petition to Modify the Conditions of Supervision with the Consent of the Offender (Dkt. 108)*, was approved by Your Honor to address Mr. Van Haften's need for housing resources, treatment services, and reintegration support. It is noted that Mr. Van Haften's deradicalization and reintegration were factors specifically identified by Your Honor in his Judgment and Commitment Order when recommending a pre-release placement at a residential reentry center at the time of sentencing. It appears Mr. Van Haften did not receive any specific deradicalization programming throughout his incarceration and his radical rhetoric persists.

While the U.S. Probation Office was working with the BOP to secure public law placement for Mr. Van Haften prior to his release from custody; the undersigned officer received information from the BOP that Mr. Van Haften had advanced his extremist views. That information included a report from the Federal Bureau of Investigation. As a result of the investigation into his suspected continued radicalization, Mr. Van Haften was placed in a special housing unit on April 21, 2023, until his release on May 18, 2023. It is noted in the report that Mr. Van Haften made several statements regarding wanting to drive a truck into a crowd of people. It is also noted while in BOP custody he continued his radical rhetoric and had an ISIS flag among his possessions in his cell.

On May 18, 2023, Mr. Van Haften was released to Rock Valley Community Programs (RVCP) and began his term of supervised release. On August 2, 2023, Mr. Van Haften again agreed to a modification of his conditions of supervised release, which included an additional 180-day public law placement at RVCP to allow him more time to secure his own housing and continue to have access to additional support and resources RVCP provides *(Dkt. 109)*. On June 13, 2023, Mr. Van Haften completed a substance use assessment with Compass Behavioral Health. He was diagnosed with Cannabis Use Disorder, mild, in sustained remission, in a controlled environment and was not recommended for substance use treatment; he was recommended to complete a psychiatric evaluation.

On July 5, 2023, Mr. Van Haften failed to attend his scheduled psychiatric evaluation appointment with Alay Psychology. On July 19, 2023, U.S. Probation Officer (USPO) Michael Sutor met with Mr. Van Haften and discussed the missed appointment. Mr. Van Haften stated he forgot about the appointment, despite U.S. Probation Officers reminding him of it the week before. Due to the missed appointment, Mr. Van Haften's psychiatric evaluation was not conducted until July 27, 2023. The recommendations from the initial assessment included psychotherapy for psychosocial support if patient desires, no psychiatric medications recommended at this time, and to re-refer if patient has any future psychiatric medication management or mental health concerns. The undersigned officer spoke with the psychiatrist who conducted the mental health evaluation and discussed Mr. Van Haften's risks and needs that could be addressed by continued mental health counseling. Specifically, Mr. Van Haften's lengthy incarceration, his past mental health concerns, and the need to continue to assess and manage risks related to his continued radicalized beliefs. Mr. Van Haften was assigned a mental health counselor through Compass Behavioral Health and began attending bi-weekly sessions in September 2023.

On July 26, 2023, Mr. Van Haften was laid off from his job at Diversified Personnel Services (DPS) after the facility restructured their shifts and could no longer keep him as an employee. On August 14, 2023, he gained full-time employment at Monterey Mills in Janesville as a general laborer. Due to the comments he made in BOP custody regarding wanting to drive a truck into a crowd of people, the U.S. Probation office has concerns regarding Mr. Van Haften taking public transportation. As a result, Mr. Van Haften was initially transported by RVCP staff until safeguards were put in place, including that he could only use public transportation for work purposes. He also agreed to follow all rules put in place by the Janesville Transit System.

On August 15, 2023, the undersigned officer received a call from the Wisconsin State Capitol Police regarding a letter Mr. Van Haften sent to State Senator Mark Spreitzer. The letter included a request for the U.S. Government to strip him of his citizenship and allow him to go to the Islamic Emirate of Afghanistan. The Wisconsin State Capitol Police did not identify any criminal activity but provided notice to the undersigned officer of the letter. Mr. Van Haften also sent a similar letter addressed to the President of the United States. The probation office has spoken with Mr. Van Haften about his intentions in writing letters to political leaders and attempted to offer feedback and different perspectives of how others might interpret such requests for deportation and renouncing his U.S. citizenship.

On September 1, 2023, the undersigned officer and USPO Sutor met with Mr. Van Haften to discuss his continued statements regarding renouncing his citizenship and his wish to be deported to Afghanistan. Mr. Van Haften was told his request to be deported was improbable, and that relinquishing U.S. citizenship would likely be inadmissible in his case. Officers also discussed the benefits of him participating in mental health treatment as it can be a safe environment for him to discuss his thoughts and beliefs while assisting him as he re-enters the community. Mr. Van Haften stated he did not wish to re-enter this community, and his goal was still to renounce his citizenship and be deported. He challenged the officers, when informed of the low probability of being deported, and made a statement that he will be allowed to return to Afghanistan, "when the West falls."

On September 14, 2023, the probation office was notified by RVCP staff that Mr. Van Haften had approached a staff member working at the "Corner Store" located inside RVCP and asked them if he "resembled the Taliban" to which the staff member responded "yes." Mr. Van Haften then stated, "…good that's what I'm aiming for…" and asked if the staff member could report him to a member of Congress or authorities because he would like to be deported. On September 19, 2023, the undersigned officer and USPO Sutor met with Mr. Van Haften to discuss the comments made to the RVCP staff member. Mr. Van Haften noted he did not think there was anything wrong with the statements he made as he wants people to contact their congressmen in hopes they will help him get deported. Probation officers discussed how it was not appropriate to be asking individuals if they believed he was a part of the Taliban and that future comments like these could jeopardize his housing placement at RVCP. Mr. Van Haften verbally agreed not to make comments like this in the future. Also during this conversation, Mr. Van Haften asked if he would be able to get a pass to go to a hotel for a weekend with a woman from Mexico he had met online. He noted his intention was to marry this woman when she hopefully came to the United States in November 2023. Officers discussed he would not be approved to go to a hotel for a weekend. Officers encouraged Mr. Van Haften to continue to save money from his employment, continue looking for his own housing, and participate in mental health treatment.

On September 22, 2023, the probation office was notified by RVCP staff, who received notice from the Wisconsin Sex Offender Registry (WISOR), that Mr. Van Haften had called to report additional internet identifiers to the registry. During the phone call, Mr. Van Haften informed staff at WISOR he would be leaving the country, and when asked where he was going, he informed them he was "running away." WISOR staff then informed RVCP staff, who confirmed Mr. Van Haften was still at the facility.

On September 26, 2023, RVCP staff informed the probation office that Mr. Van Haften's stepfather had tried to drop off a book for Mr. Van Haften that was not allowed at the facility. This book was titled *"The Most Dangerous Book in the World 9/11-a Mass Ritual,"* which includes an extra book, *"The Next 9/11? - A Work of Predictive*

*Fiction*" by S.K. Bain. RVCP staff informed Mr. Van Haften he would not be allowed to have the book at the facility, and it would be returned to him upon his discharge.

Since June 2023, Mr. Van Haften has had an approved cell phone that is monitored by the probation office. During periodic reviews of his phone use, numerous items have been flagged by the monitoring system to be associated with international terrorism or extremist material. Also noted in reviews, Mr. Van Haften has expressed to numerous women on dating apps his plan to save enough money from his employment to be able to leave the United States by fleeing through Mexico.

On October 20, 2023, the undersigned officer and USPO Sutor met with Mr. Van Haften at RVCP. The officers presented Mr. Van Haften with a Probation Form 49 – Waiver of Hearing to voluntarily modify conditions of supervised release to include Special Conditions 21 and 22, as noted above. Mr. Van Haften did not consent to waiving a hearing and modifying his conditions. Mr. Van Haften became upset during this conversation and made several comments regarding how he would rather be dead than wear a GPS unit and that his only choices were to end up back in prison or dead. Officers informed RVCP staff of Mr. Van Haften's comments, and Mr. Van Haften was placed on hourly safety checks throughout the weekend.

The probation office believes the conditions listed above are reasonably related to the risks occasioned by the persistent radicalization and comments made by Mr. Van Haften, as well as his self-reported intention to leave the United States. There is nothing in the record which indicates that Mr. Van Haften deradicalized during his time in BOP custody, or since his term of supervised release began. Based on our conversations with him, his actions, and reviewing his computer monitoring, the risks he presents are ever-present.

**Probation Officers Recommendation**: It is respectfully recommended that a summons be issued to return Mr. Van Haften to court for a judicial review to show cause why his conditions of supervised release should not be modified and to address the alleged violation.

Assistant U.S. Attorney Elizabeth Altman was consulted regarding our office's request for a hearing.

**Penalties**: Pursuant to 18 U.S.C. § 3583(e)(3), if the term of supervised release would be revoked, the statutory maximum term of imprisonment is 24 months because the offense of conviction is a Class C felony.

The most serious alleged violation in this case is classified as a Grade C violation, pursuant to USSG § 7B1.1(a)(3). A Grade C violation coupled with Criminal History Category VI results in an advisory guideline range of imprisonment of 8 to 14 months, if the term of supervised release is revoked.

Pursuant to 18 U.S.C. § 3583(j), another term of supervised release is authorized to follow imprisonment. The statutory maximum term of supervised release that can be re-imposed is life.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 27, 2023

/s/
Brittany M. Schwonke
U.S. Probation Officer

**THE COURT ORDERS:**

☒ The issuance of a summons for a hearing to review grounds for modification as to Mr. Van Haften's supervised release conditions, by adding Special Conditions No. 21 and 22 based on his actions and statements, as well as to consider the alleged violation pertaining to mental health treatment noncompliance.

☒ Appointment of counsel, if defendant demonstrates that he is indigent.

☐ Other:

_____
William M. Conley for James D. Peterson
District Judge

*October 27, 2023*
_____
Date